UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| In re: | }<br>} |
| PHILLIP BROTHERS, and<br>TINA BROTHERS, | }<br>} Case No. 09-42409-JJR-07<br>} |
| Debtors. | }<br>} |

| | |
|---|---|
| PHILLIP BROTHERS, and<br>TINA BROTHERS | }<br>}<br>} |
| Plaintiffs, | } |
| v. | } Adv. P. No. 09-40098-JJR |
| BLOUNT COUNTY WATER AUTHORITY, | }<br>}<br>} |
| Defendant. | } |

## MEMORANDUM OPINION

In their Complaint the plaintiffs/debtors, Phillip and Tina Brothers (Debtors), alleged the defendant, Blount County Water Authority (Authority), violated Section 362(a) of the Bankruptcy Code,[1] when the Authority notified the Debtors' poultry production contractor that payment of the Debtors' water bill was delinquent, which led to the contractor paying the bill and deducting the amount paid from what it owed to the Debtors. The Authority filed a Motion For Summary Judgment (AP Doc. 32) pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, and claimed it is entitled to a judgment as a matter of law.[2]

---

[1] 11 U.S.C. § 101 *et seq*, and herein the "Code" or "Bankruptcy Code." Unless the context indicates otherwise, all references to a "Section" are to a section, subsection, paragraph, subparagraph, clause or other subdivision of the Code.

[2] All references to a "Bankr. Rule" are to a Rule of the Federal Rules of Bankruptcy Procedure.

JURISDICTION:

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order. In compliance with Bankr. Rule 7052(a), the following shall constitute the Court's findings of fact and conclusions of law.

BACKGROUND AND FACTS:

The material facts on which the Court has based its decision in this Opinion are not in dispute—those facts are as follows: The Debtors own a poultry farm, and on January 27, 2009 they entered into a Poultry Production Agreement with Koch Foods.[3] Under the Production Agreement, Koch delivered juvenile chickens to the Debtors' three poultry houses. The Debtors fed, watered and otherwise cared for the chickens until they reached a specific weight when they were harvested by Koch. The Debtors were paid for their efforts based on the weight of the harvested birds.

On August 17, 2009 the Debtors filed a petition for relief under chapter 13 of the Bankruptcy Code.[4] In their Statement of Financial Affairs (Bk Doc. 1) the Debtors disclosed that Phillip

---

[3] Initially the Production Agreement was not disclosed in the Debtors' Schedules, but was later added by an amendment to Schedule G after their Complaint was filed in this adversary proceeding. (Bk Doc. 59). A copy of the Production Agreement was submitted by the Debtors and the Authority in support of their respective positions.

[4] On October 16, 2009 the Debtors commenced this adversary proceeding against the Authority, and on April 7, 2010, at the Debtors request, their bankruptcy case was converted to a case under chapter 7. Because the Debtors' cause of action against the Authority for an alleged stay violation arose after the chapter 13 case was filed and before its conversion to chapter 7, the cause of action was not property of the chapter 7 bankruptcy estate, but remained property of the Debtors. Section 348(f)(1)(A).

2

Brothers had leased the poultry farm to Roger Brothers, his father. The lease was executed on August 7, 2009, only 10 days before the Debtors filed their bankruptcy case. (AP Doc. 49, Exhibit G to Debtors' Reply Brief). The lease stated it was effective September 1, 2009.

The Debtors' chapter 13 plan, as amended, was confirmed on November 24, 2009. Their plan proposed to pay two secured claims and administrative expenses, but nothing to unsecured creditors.[5] On April 7, 2010 the Debtors voluntarily converted their case to chapter 7.[6]

The Debtors scheduled the Authority as one of their unsecured creditors. For the most part, the debt owing to the Authority was for water furnished to Debtors and used in their poultry operations with Koch.[7] Tina Brothers testified during her deposition that on two occasions a representative of the Authority phoned her about the unpaid water bill. Apparently the first phone call occurred before bankruptcy was filed, and the second came shortly after the filing.[8] According

---

[5]The Debtors filed four proposed plans (Bk Docs. 3, 41, 52, 58), including the plan ultimately confirmed on November 24, 2009 (Bk Doc. 65).

[6]*Supra* at n. 4.

[7]Some of the water was used by the Debtors at their personal residence.

[8]In their Brief and again at the hearing on summary judgment (but not in the Complaint), the Debtors asserted that the second phone call was a violation of the automatic stay. An inquiry about whether the Debtors' lessee (and father) intended to pay the bill was justified. The automatic stay is not so sensitive as to prohibit a creditor from making an inquiry with respect to payment of a claim when there is a reasonable expectation it may be paid by another party due to such party's interest being in jeopardy if the claim is not paid. Such an inquiry is allowed so long as there is no harassment, threat or demand directed toward the debtor. Nonetheless, even if the phone call did violate the stay, it caused no damages recoverable under Section 362(k). Attorney's fees incurred by a debtor to enforce the stay or cure an on-going stay violation (e.g. recovery of assets wrongfully repossessed postpetition) are recoverable, but fees incurred merely to confirm a violation occurred are not; i.e., where the debtor did not suffer any injury as a result of the stay violation, did not incur nor stand to incur any damages as a result of the stay violation prior to filing the action, and did not have to file the action in order to keep the creditor from further violating the stay or to undo the effects of a violation of the stay. *Hutchings v. Ocwen Federal Bank (In re Hutchings)*, 348 B.R. 847, 901-902 (Bankr. N.D. Ala. 2006) (Cohen, J.).

to Mrs. Brothers both conversations were innocuous inquiries, including whether Roger Brothers, the Debtors' lessee, intended to pay the water bill. (Tina Brothers depo. pp. 10-14).[9] After the second phone conversation, the Authority notified Koch of the unpaid water bill and sent Koch a copy of the bill. The water bill, which is central to the Debtors' claims against the Authority, covered service from July 15, 2009 to August 25, 2009 and was in the amount of $1,570.42.[10] The amount due included $1,238.20 from a previous balance.

According to the deposition testimony of Harold Hunt, a representative of Koch, the Authority did not make a demand on Koch for payment, but the Authority did inform Koch the water would be cut off if the bill was not paid . (Hunt depo. pp. 46-48, 63-64).[11] Koch paid the water bill and later deducted the amount paid from a distribution Koch owed to the Debtors pursuant to their Production Agreement. (Hunt depo. pp. 40-41). During his deposition, Hunt explained why Koch paid the past-due water bill:

> Q. . . . And one of the producer's responsibilities would be to provide water to the birds?
> A. Absolutely.
> Q. . . . And what happens to a bird if it doesn't get any water?

---

[9] The Debtors and the Authority each submitted a copy of Tina Brothers' deposition in support of their respective positions.
The lease between the Phillip Brothers and his father stated it was effective September 1, 2009. Under the terms of the lease, the father was responsible for the payment of all utilities. The water bill at issue covered service from July 15, 2009 to August 25, 2009, but was due September 10, 2009. The deposition testimony of Phillip and Tina Brothers was unclear as to whom was responsible for payment of bill under the lease. Regardless of who was responsible, it was reasonable to assume that because of the father's leasehold interest in the poultry farm he should have been informed of the unpaid bill and the possibility of water service being discontinued.

[10] Exhibit M to Debtors' Reply Brief.

[11] The Debtors and Authority submitted a copy of Harold Hunt's deposition in support of their respective positions.

4

> A. The same thing that happens to a human. It dies.
> Q. And what's the time frame in days if a bird doesn't get any water, before it perishes?
> A. Probably two days.
>                *     *     *
> Q. . . . the water bill, because, like you said, two or three days with no water, you might have 75,000 dead birds on your hands?
> A. That's correct.
> Q. Okay.
> A. We had two options, Robert, on this. We could have either went out and caught the birds and move them to another farm or paid – or deduct the water bill.
> Q. . . . And was it more cost effective just to pay the water bill?
> A. Absolutely.

(Hunt depo. pp. 33-35).

## STANDARD FOR SUMMARY JUDGMENT:

A motion for summary judgment is governed by Bankr. Rule 7056, which provides that Rule 56 of the Federal Rules of Civil Procedure is applicable to bankruptcy adversary proceedings. A court may grant summary judgment to a moving party when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any materal fact and that the movant is entitled to judgment as a matter of law." Rule 56(c)(2), Fed. R. Civ. P. In considering the merits of a motion for summary judgment, the judge's function is not to determine the truth of the matter asserted or the weight of the evidence, but to determine whether the factual disputes raise genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In making this determination, the facts are to be considered in a light most favorable to the non-moving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Allen v. Board of Public Educ. For Bibb Co.*, 495 F.3d 1306 (11th Cir. 2007).

5

ANALYSIS AND CONCLUSIONS OF LAW:

The Debtors argued that the Authority intentionally violated the automatic stay when it notified Koch about the unpaid water bill. The Debtors considered the Authority's notification of Koch as an implicit— if not actual—threat that if the bill was not paid their water service would be discontinued, which would have resulted in the demise of the 75,000 chickens in which Koch and the Debtors had a substantial investment.[12] That Koch paid the water bill after being notified should have come as no surprise. What was less foreseeable was that Koch would deduct the amount of the payment from what it owed to the Debtors; but the claim for stay violation is not against Koch, it is against the Authority. The water bill covered both pre- and postpetition service. Any act to collect the prepetition portion of the bill against the Debtors was stayed under Section 362(a)(6) and, as discussed below, was prohibited by Section 366(a). Any willful violation of the stay by the Authority that resulted in injury to the Debtors would entitle them to recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, even punitive damages. Section 362(k)(1). Hence, the issue to be decided by the Court may be simply stated as: Was it a violation of Sections 362(a)(6) and 366(a) for the Authority to notify Koch about the unpaid water bill, knowing that such notification would likely lead to payment by Koch? For the reasons stated below, the Court holds that under these undisputed facts there was no violation of either Section.

## *Section 366*

The Authority is a utility, and while it is subject to certain restraints, it is also entitled to certain rights under Section 366. Specifically, Section 366(a) prohibits a utility from refusing to

---

[12]Although supported by Hunt's deposition testimony, *supra*, this Court will take judicial notice of the fact that because of the heat in Alabama during late August and early September chickens in a crowded poultry house will not survive long without water.

furnish postpetition service because of a unpaid prepetition claim, but Section 366(b) allows a utility to "discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment . . . for service after such date." In other words, while Section 366(a) prohibits efforts to collect an unpaid bill for prepetition service, the utility may discontinue service if, within 20 days after the petition date, it is not provided adequate assurance of payment for postpetition service.[13] According to the record in this case, no such adequate protection was furnished, tendered or proposed by the Debtors. A portion of the bill covered postpetition service and after the Debtors filed their petition they continued to use water supplied by the Authority, yet they ignored their obligation to furnish adequate assurance of payment to the Authority under Section 366(b). Inasmuch as no adequate assurance for postpetition service was timely furnished by the Debtors, the Authority could have discontinued service—there being no grace period beyond the 20 days allowed in Section 366(b).[14] The Court concludes that the Authority was not only within its rights in notifying Koch of the unpaid bill but it would have been fundamentally unfair to proceed with discontinuing water service without giving Koch an opportunity to protect its investment in the chickens at the Debtors' farm. The fact that Koch paid both the pre- and postpetition portions of the bill is of no consequence. Koch failed to ask for a

---

[13] As mentioned above, in addition to the prohibition under Section 366(a), Section 362(a)(6) would have stayed attempts to collect the prepetition portion of the water bill from the Debtors.

[14] The water bill's due date was September 10, 2009; the stamp on a copy of the bill offered by the Debtors indicated it was received by Koch on September 22, 2009 (Hunt depo. p. 47; Exhibit M to Debtors' Reply Brief); the fax from the Authority notifying Koch of the Debtors' bankruptcy was dated September 23, 2009 (Exhibit K to Debtors' Reply Brief); and Koch's check payable to the Authority was dated September 29, 2009 (Exhibit J to Debtor's Reply Brief) — all those dates are more than 20 days after August 17, 2009, the Debtors' petition date.

7

breakdown although it was clear on the face of the bill that it covered both pre- and postpetition service. Moreover, at that juncture the transaction was between the Authority and Koch, not the Debtors—as a non-debtor, Koch was not entitled to protection under Section 366(a).[15]

*Sections 1301(a) and 362(a)*

Even if a less oblique demand for payment had been made on Koch by the Authority, the same would not have violated the stay imposed by either Section 1301 or Section 362. Section 1301(a) imposes a stay on creditors seeking to collect "a consumer debt of the [chapter 13] debtor from an individual that is liable on such debt with the debtor." It is unlikely the water bill qualified as a consumer debt, but even if it did, Koch is not an individual and was not liable for payment as a co-obligor or otherwise.[16]

Finally, and most significant, Section 362(a)(6) prohibits "any act to collect . . . a claim *against the debtor* that arose before the commencement of the case . . . ." If the notification of Koch about the unpaid bill can be construed as a demand for payment, then it was a demand nonetheless against Koch—not the Debtors. *See In re Kirby*, 151 B.R. 463, 465-66 (Bankr. M.D. Ten. 1992) (holding that the creditor, who was the debtor's aunt, did not violate the automatic stay by contacting the debtor's parents seeking repayment). Koch, not the Authority, deducted the amount paid for the water bill from what it owed the Debtors—that deduction may have given traction to a claim by the

---

[15]Not only did the Authority have a right to notify Koch of the unpaid bill, they had an ethical duty to provide Koch notice and an opportunity to pay the bill. Although the stay imposed under Section 362(a) is broad, it would be nonsense to hold that although the Authority could discontinue service pursuant to Section 366(b) and jeopardize Koch's investment in 75,000 chickens, the Authority was prohibited from giving Koch fair warning of what was afoot without risk of violating the automatic stay.

[16]The Debtors do not assert any claim based on a violation of the stay imposed by Section 1301(a).

8

Case 09-40098-JJR    Doc 54    Filed 06/29/10    Entered 06/29/10 14:22:03    Desc Main
Document      Page 8 of 9

Debtors against Koch, but not against the Authority.

Accordingly, for the reasons stated above, the Court concludes that the undisputed facts in this case, when paired with applicable law, clearly demonstrate that the Authority is entitled to summary judgment in its favor. Pursuant to Bankr. Rule 9021 a separate judgment will be entered consistent with this Opinion.

Dated: June 29, 2010

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

9

Case 09-40098-JJR   Doc 54   Filed 06/29/10   Entered 06/29/10 14:22:03   Desc Main
Document    Page 9 of 9